Mary P. Hunter v. Commissioner.
Hunter v. Commissioner
Docket No. 110176.
United States Tax Court
1943 Tax Ct. Memo LEXIS 308; 2 T.C.M. (CCH) 85; T.C.M. (RIA) 43228; May 12, 1943
*308 W. W. Spalding, Esq., for the petitioner. Homer J. Fisher, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent has determined a deficiency in petitioner's income tax for the year 1939 in the sum of $9,795.54. Petitioner alleges error in this determination in that respondent included in her taxable income for the year 1939 the amounts of money "received by petitioner in 1937, 1938 and 1939 as the consideration for an option to purchase given by her on certain shares of stock." Findings of Fact The parties have filed a written stipulation of facts and we find them to be as stipulated. They are substantially as follows: Petitioner was, during the years 1932 to 1939, inclusive, the owner of 21,440 1/2 shares of the common stock of the Atlas Pipeline Corporation (hereinafter referred to as the "Atlas Corporation"). These shares of stock were acquired in 1931 by petitioner as a bonus with the purchase of bonds of the Atlas Corporation. The bonds were sold by petitioner prior to 1937 and the entire cost was used as a basis for determining gain or loss from the sale thereof. This left the basis of the stock of the Atlas Corporation in petitioner's hands *309 at zero. On October 26, 1937, petitioner together with other stockolders owning in the aggregate approximately 140,000 shares of the common stock of the Atlas Corporation, entered into a written agreement with the Lion Oil & Refining Co. (hereinafter referred to as the "Lion Company"), by which the Lion Company was given an option to purchase such shares, including the 21,440 1/2 shares owned by petitioner, at the price of $2.60 per share subject to Lion Company's election to take the option after making certain investigations. It was provided in this agreement that the owners of the stock should endorse the certificates in blank and deliver them to the First National Bank of Shreveport, Shreveport, Louisiana, as escrow agent. The Lion Company, on or before December 1, 1937, elected to take from the sellers an option to purchase said stock and to pay the escrow agent 20 cents per share for such option, good until February 15, 1938, to purchase the Atlas Stock at $2.60 per share. This option, according to its terms, could be extended for further periods of three months each by paying specified amounts to the escrow agent for the benefit of the depositors; and it was provided in the *310 option that if it should be exercised, all amounts previously paid for the option were to be applied against the purchase price of the shares. The option agreement also provided that the payments thereunder should be distributed to the owners of the stock so deposited, without obligation on their part except that the amounts received should be applied against the purchase price of the stock, $2.60 per share, if the option should be exercised. There was paid to the escrow agent by the Lion Company an amount equal to 20 cents per share in 1937, an amount equal to $1.32 per share in 1938, and an amount equal to 18 cents per share in 1939, all of which amounts were paid over to the depositing stockholders by the escrow agent in the same year in which they were received by it. These amounts were paid to and received by stockholders of the Atlas Corporation, including the petitioner, in accordance with the terms of this option agreement. Although the Lion Company paid these amounts on the successive dates required to keep the option in force up to May 15, 1939, it notified the escrow agent on May 16, 1939 that there would be no further extensions of the option, that the option was forfeited, *311 and that the escrow agent might return the certificates of stock to the owners thereof, which was in fact done in 1939. As a result of these transactions, the taxpayer received from the escrow agent $4,288.10 in 1937, which she included in her return as being 100 percent taxable. In 1938 the petitioner received $28,301.46 from the escrow agent as petitioner's share of the several amounts paid by the Lion Company to it in that year. This amount was reported in petitioner's return for 1938 as a long term capital gain, i.e., petitioner reported one-half thereof or $14,155.73 as taxable under section 117 of the Revenue Act of 1938. In 1939 petitioner received $3,859.29 from the same source, which amount she reported in her return for 1939 as a long term capital gain, i.e., petitioner included in income $1,929.64 as income taxable to her under section 117 of the Revenue Act of 1938. All income taxes were paid by petitioner on the amounts so reported by her in her returns for the several years 1937, 1938 and 1939. Petitioner's income tax returns for the calendar years 1937, 1938 and 1939 were all filed with the collector of internal revenue for the district of Louisiana. She reported *312 her income for tax purposes upon the cash basis of accounting. Her return for the year 1938 was filed on or before March 15, 1939. In his notice of deficiency in the present case, respondent allocated to the year 1939 all amounts received by petitioner in the years 1937, 1938 and 1939, as her portion of the option money paid by the Lion Company. Opinion KERN, Judge: This case is controlled by our reasoning in , affirmed , certiorari denied , wherein we said (p. 198): "Thus it is necessary to exclude such payments [payments made upon an option which were to be credited on the purchase price if the option was exercised] from the income of the year in which received and to include them for the later year [the year in which the option terminated] when, for the first time, a satisfactory determination of their character for income tax purposes can be made." It is true that in the instant case the basis of the stock in petitioner's hands was zero, and therefore any purchase price to be obtained by her for it would be taxable gain; *313 but until it was ascertained whether the money received by her was to be simply in payment for the option or was to constitute the purchase price of the stock it was impossible to determine whether it would constitute ordinary income, taxable in its entirety, or capital gains, taxable only as to a certain percentage. Therefore, it was not until 1939 that the character of these receipts for income tax purposes could be determined. It follows that the amounts of money received by petitioner pursuant to the option contract, even though received in earlier years, were taxable to her in 1939. Decision will be entered for respondent.